**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CAMILLE ARNOLD** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 02 C 8696** |
| **v.** | ) | |
| | ) | |
| **JAMES NEWSOME, as Chairman and not** | ) | **Mag. Judge Michael T. Mason** |
| **individually, COMMODITIES FUTURES** | ) | |
| **TRADING COMMISSION, an agency of the** | ) | |
| **United States Government,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge:

Plaintiff, Camille Arnold, has sued her employer, the Commodities Futures Trading Commission ("the CFTC"), for violations of Title VII of the 1964 Civil Rights Act as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e-2 *et. seq.* ("Title VII") and 42 U.S.C. § 1981, alleging that her employer discriminated against her on the basis of her race by failing to promote her to a GS-14 prior to July 2002 and retaliated against her because she complained of discrimination. Defendant has moved for summary judgment. For the following reasons, we grant defendant's motion.

**BACKGROUND**

The crux of Arnold's complaint is that the CFTC discriminated against her by failing to promote her sooner and retaliated against her for complaining about the discrimination. Arnold admits that she has never heard Williamson or Berkowitz say anything overtly racist; nor has Arnold ever heard Williamson or Berkowitz say that she should not be promoted

because of her race or because she complained about discrimination.[1]

## Arnold's Employment

Arnold, an African American woman, works as an attorney for the CFTC's Division of Enforcement in its Chicago office. Arnold began working for the CFTC as an attorney in the New York office in 1992. She requested a transfer to the Chicago Regional office in 1996. At the time of the transfer, Arnold was at a pay grade of GS-13.

In the fall of 1998, Arnold's direct supervisor in the Chicago office, Hugh King, unexpectedly died. Following Mr. King's death, Susan Berkowitz ("Berkowitz") and Scott Williamson ("Williamson"), both white attorneys, supervised Arnold. Berkowitz was Regional Counsel for the CFTC's Chicago office from mid-1997 to December 1999. She then became Deputy Chief of Staff. In those positions, Berkowitz acted as either Arnold's direct, second or third level supervisor. Williamson was Arnold's team leader from January 1999 until June 2000. Williamson was also Acting Regional Counsel from December 1999 until September 2002. In both positions, Williamson acted as either Arnold's direct or second level supervisor.

## Arnold's Performance

Over a period of several years, Arnold's performance evaluations contain both

---

[1] Unless otherwise noted, the facts in this section are uncontested and come from the parties' Rule 56.1 statement of facts or exhibits in support thereof. We note, however, that many of the facts alleged in Arnold's statement of facts and in her response to defendant's statement of facts are not supported by the record, admissible evidence or the exhibits she cites. Accordingly, we will not consider those unsupported facts. *See Mingo v. Roadway Express, Inc.,* 135 F. Supp. 2d 884, 893-94 (N.D. Ill. 2001); *Bell Enters. Venture v. Santanna Natural Gas Corp.,* 2002 U.S. Dist. LEXIS 19460 (N.D. Ill. 2002) (recognizing that the Court must disregard factual contentions in the Rule 56.1 statement of facts or response which are conclusory or unsupported by the record or admissible evidence).

positive and negative comments and ratings. For instance, Arnold's July 1996 - June 1997 evaluation indicates that Arnold has problems progressing in a timely manner, that her work would benefit from more thorough legal research and document analysis and that her legal analysis in complex writings needs to be more comprehensive and focused. Arnold's July 1997 - June 1998 evaluation states that she needs to pay attention to all of the details on her cases and examine the facts carefully in each matter. Arnold's January 1998 mid-year progress review indicates that there is room for improvement in Arnold's writing. The progress review also states that Arnold fails to keep supervisors apprised of significant developments in her cases and refuses to accept responsibility for this problem.

Arnold's performance evaluation for July 1998 - June 1999 was completed by Berkowitz. The evaluation states that Arnold's "rating year had its highs and lows." Berkowitz lists quite a few accomplishments of Arnold's and awards her an overall performance level of "meets or exceeds." However, the evaluation also indicates that Arnold failed to contemplate the need for an expert witness in the *Riley* action; that she missed the deadline for filing a post-hearing brief in *Riley*; that she had difficulty communicating with investigators; and that she was required to appear before an administrative law judge in *Riley* to demonstrate why she should not be sanctioned for misleading the Court. Berkowitz also states that Arnold has difficulty communicating with her supervisors about her inability to accomplish tasks within the assigned time period. Finally, the evaluation indicates that Arnold must demonstrate that she can plan and guide investigations with minimal supervision.

Arnold's July 1999 - June 2000 performance evaluation indicates that Arnold needs to keep her supervisors informed, she needs to improve her planning on litigation strategy

3

and she needs to plan and organize her work to complete it in a timely manner. This evaluation also states that Arnold's written work product requires heavy editing at times because it is not always well organized.

Arnold also had other performance issues while working at the CFTC. For instance, as a result of missing the deadline for filing the post-hearing brief in *Riley*, on July 21, 1999, Williamson issued a letter of warning to Arnold. In September 1999, Arnold made a last-minute request for leave to depart one day early from an annual training conference to attend a wedding. Williamson initially granted the leave, but Berkowitz denied Arnold's request. Arnold replied with an e-mail to Williamson stating: "[n]ext time, I'll just request the leave regardless of what has to be done and I'll stick you with the work." Additionally, on July 11, 2000, Williamson issued a letter of caution to Arnold for having a loud and unprofessional argument with a paralegal during a monthly staff meeting. While Arnold contends that other white attorneys had similar encounters and suffered no consequences, she has presented no evidence in support of this contention.

**Opportunities for Promotion to GS-14**

On June 25, 1998, Arnold and other CFTC staff received an e-mail from CFTC headquarters authored by Geoffrey Aronow. The Aronow e-mail stated in pertinent part:

> I am pleased to announce that we have been given the go-ahead to promote attorneys in the [Division of Enforcement] from GS-13 to GS-14 with greater ease and routine than in the past. Attorneys who have been in grade at the CFTC as a GS-13 for at least a year will be eligible for consideration for promotion. The criteria for promotion will include such factors as ability to work independently, to handle more complex matters and similar considerations.
>
> I am very happy that we have been given this go-ahead to do what many of you know other agencies have been able to do, to provide this promotional opportunity as a more routine manner to those who show the

necessary skills, abilities and performance.

At the time of this e-mail, Arnold was at a pay grade of GS-13. Arnold alleges that she was eligible and should have been promoted to GS-14 when Aronow sent this e-mail in June 1998. The CFTC did not promote Arnold at this time.

Arnold contends that promotions to GS-14 had been tenure-based in the past, before she became the senior-most attorney awaiting a promotion to GS-14. However, based on the evidence before us, promotions at the CFTC are currently and for some time, have been merit-based. Williamson explained that since 1995, the Chicago office has promoted individuals on the basis of merit, not tenure. Indeed, the September 1996 CFTC Employee Handbook states that, "even if you're in a career ladder, you must be performing at the next level before your supervisor will authorize your promotion to the next level." Additionally, in May 1998, Aronow and Daniel Nathan sent a memorandum to Linda Ferren in Washington in which they propose creating more GS-14 positions for the Division of Enforcement. This memo clearly states that proposed policy would not provide for automatic promotions of attorneys to the GS-14 level. Instead, it would allow supervisors to recommend for promotion those attorneys who have been at GS-13 for at least one year, have received consistently high ratings, and have shown the ability to both function independently in all aspects of their job and to help train and supervise more junior attorneys. Aronow's June 1998 e-mail about GS-14 promotions also states an employee must be able to work independently and handle complex matters in order to be promoted. Further, in a February 28, 2000 e-mail to Arnold, Williamson outlined the standards for becoming a GS-14. Williamson stated:

[C]onsistent with Division policy, I intend to look for attorneys who: write very

well, with work product that reflects attention to detail, is well-organized and is appropriate for the intended audience; independently identify and research issues, keep supervisors apprised of significant investigative and litigation developments; independently anticipate issues, analyze possible responses, and recommend appropriate solutions; possess a broad and detailed knowledge of the industry; demonstrate an ability to plan and timely complete investigations, including investigations posing novel or complex issues; etc. I do not think that promotions should be tenure-based as was perhaps the past practice.

The standards reflected in Williamson's e-mail are consistent with those described in the CFTC Employee Handbook, in Aronow and Nathan's memo and in Aronow's June 1998 e-mail about GS-14 promotions. Arnold's contention that Williamson and Berkowitz schemed to circumvent the established tenure-based promotion policy of CFTC Headquarters is not supported by the record.

**Promotions to GS-14**

On July 2, 2000, Ann Theodore, a white female, was promoted to a GS-14 position. She was recommended by her supervisors Greenwald and Williamson. Theodore was the only Chicago attorney promoted to GS-14 in 2000 or 2001. In Williamson's affidavit, he explains that Theodore was qualified for the promotion because of her prior accomplishments: Theodore had previously served as a law clerk for a district court judge, had worked as an associate and been made a partner at a major Chicago law firm, had displayed outstanding skills in running several large investigations at the CFTC and in litigating complex actions while requiring minimal supervision.

From January 20, 2001 until December 27, 2001, the CFTC operated under a freeze of all hiring and promotion decisions. During the freeze, in early 2001, Williamson recommended Diane Romaniuk, another white female, for a promotion to GS-14. A few

months after the freeze ended, on April 3, 2002, Romaniuk was promoted to GS-14.[2] When Romaniuk was promoted, she had been a practicing attorney for twenty-seven years and had been working for the CFTC for four years. Prior to working for the CFTC, Romaniuk had previously worked for the Illinois ARDC for two years, the FDIC for four years, Chicago Title & Trust for four years, and she had been a public defender for more than ten years.

On July 12, 2002, Arnold, along with Ava Gould, Susan Gradman and Cliff Histed were promoted to senior trial attorneys at pay grade GS-14. They were recommended by their team leaders and their promotions were approved by the Regional Office.

## Arnold's Qualifications

Arnold contends that it is uncontested that she was more than qualified for a promotion to GS-14 by May 1998.[3] However, in Berkowitz and Williamson's affidavits, dated July 18, 2000 and August 11, 2000, they explain why Arnold was not qualified for a promotion at that time. Berkowitz explained that Arnold was not qualified to be a GS-14 in 2000 because Arnold required more supervision than Berkowitz expected of a GS-14,

---

[2] Williamson e-mailed Gregory Mocek on the day Romaniuk was promoted to express his concern that the promotion "may agitate another current trial attorney in Chicago, who has a pending EEO action for non-promotion and other alleged issues." Presumably, Williamson is referring to Arnold, who filed a formal complaint of discrimination with the EEO in April of 2000. Mocek advised Williamson to inform Romaniuk and her team leader but not to announce the promotion to the staff.

[3] Arnold claims that she was identified by the CFTC as 1 of 6 experienced GS-13 attorneys suitable for promotion in 1998. However, the document Arnold relies on is nothing more than a post-it note with six names, including Arnold's, on it. There is no evidence showing who wrote the note or when it was written, nor is there any other foundational evidence in this regard. Furthermore, the note does not say anything about Arnold's suitability or eligibility for a promotion. The note in question simply does not support Arnold's contention that she was identified as an attorney who was suitable for a promotion in 1998.

she needed to improve her time and case management and she failed to keep her supervisors informed of developments in her investigations. Berkowitz further observed that Arnold repeatedly failed to meet deadlines set by her supervisors, and as a result, allowed conduct being investigated by the CFTC to continue for years unabated.

In Williamson's affidavit, he explained that Arnold was not qualified to be a GS-14 in 2000 because Arnold had not demonstrated the requisite ability to plan and organize her work, especially in anticipating and solving problems early in the process. In addition, he noted that Arnold failed to adapt well to changing assignments and multiple priorities, or demonstrate an ability to independently determine or guide assigned investigators in their effort to aid her investigations. Williamson further observed that Arnold failed to set and/or meet appropriate deadlines on her investigations, that she did not always act with the demeanor he expected of a senior trial attorney, that she failed to timely inform her supervisors of issues or problems in her investigations and cases and that she did not take responsibility for her mistakes. Williamson also stated that Arnold's late leave request and her response to Berkowitz's denial of the leave did not show the maturity he expected of a GS-14 attorney.

Arnold submitted Rosemary Hollinger's ("Hollinger") affidavit in support of her contention that she was qualified for a promotion to GS-14. Hollinger was a CFTC senior trial attorney who was a team leader (though not Arnold's). She and Arnold had worked together frequently on two or three matters. Hollinger consulted with Arnold and reviewed her work, but did not write or give input on Arnold's performance appraisals. Hollinger stated that Williamson's low opinion of Arnold was unjustified and that Berkowitz had problems with Arnold because she and Arnold disagreed on how to handle cases.

Hollinger indicated that she did not know whether "race, color or sex were the basis" but she thought Arnold was subjected to disparate treatment. However, Hollinger did not explain why or how she thought Arnold was subjected to disparate treatment. Furthermore, Hollinger stated that she had "never heard Scott or Susan say anything racial, or anything about color or gender or observed either of them act in a racially motivated way. But Camille is a much more competent attorney than she is being given credit for." Hollinger also stated that she thought people less qualified than Arnold had been promoted and that there were staff with less trial experience who had been promoted to GS-14.

Arnold also points out that despite the alleged deficiencies in her legal skills and performance, there is no evidence that she ever fell below the "meets or exceeds" performance standard nor was her performance ever at a level requiring any performance-based intervention by the CFTC. Furthermore, when Berkowitz was appointed Regional Counsel in 1997, Arnold was not identified by Berkowitz as one of the attorneys with performance-related problems.

**Arnold's Complaints of Discrimination**

Arnold first complained about discrimination to her supervisors in 1999. On July 12, 1999, Arnold informed Berkowitz and Williamson that she believed that the ratings and comments in her July 1998 - June 1999 evaluation were unfair and inaccurate. Arnold told Berkowitz and Williamson that she thought the negative comments and low ratings were racially motivated. In particular, Arnold told her supervisors that "several comments were grossly inaccurate and maliciously written to prevent and cause [her] to appear less than competitive for promotion from GS-13 to GS-14 because of her race." In response,

Williamson prepared a memo to file in which discussed the conversation he and Berkowitz had with Arnold and offered explanations for the comments included in Arnold's evaluation.

In January and February 2000, Arnold again complained to Berkowitz and Williamson about her performance evaluations and alleged discrimination against her by certain investigators at the CFTC. On February 15, 2000, Arnold and Williamson met to discuss alleged sexual and racial discrimination. During this meeting, Arnold claimed that three white male investigators had discriminated against her, that she received more work than others, that she was treated differently in getting that work done, that she was subjected to pervasive discrimination and that she was singled out for persecution. After the meeting, on February 21, 2000, Williamson sent a memorandum to Berkowitz, Dorothy Batts and Gloria Clement explaining Arnold's claims, his thoughts on the issues Arnold raised and how he intended to address Arnold's complaints of discrimination. Williamson indicates in the memo that he reminded Arnold that she cannot raise her voice or behave unprofessionally in dealing with him.

**Arnold's EEO Administrative Complaint**

On March 14, 2000, Arnold first contacted a CFTC Equal Employment Opportunity ("EEO") counselor. On April 29, 2000, Arnold filed a formal complaint of discrimination with the EEO alleging that she had been discriminated against on the basis of race, sex, and color. Arnold's administrative complaint form included a box for allegations of reprisal. Arnold did not mark this box. Instead, she crossed it out and wrote in "disparate treatment."

In the narrative portion of the EEO administrative complaint, Arnold stated that the Chicago regional office was attempting to deny her promotion to GS-14 by systematic

unequal treatment.  In particular, Arnold claimed that white attorneys were treated more favorably with respect to case pairings and transfers.  Arnold also alleged that Berkowitz and Williamson had "all of a sudden" found her work unsatisfactory.  Arnold further claimed that she had the seniority, the qualifications and the experience over all the employees that had been promoted to GS-14.  Arnold's EEO administrative complaint contained no allegations of retaliation.

## Arnold's Complaint

On December 3, 2002, Arnold filed a complaint in the Northern District of Illinois alleging that the CFTC, through Berkowitz and Williamson, failed to promote her to a GS-14 because of her race and retaliated against her because she complained about discrimination.[4]  Arnold contends that she became eligible and should have been promoted in June 1998 when Aronow sent out the e-mail about GS-14 promotions.  She further contends that she should have been promoted in July 2000 when Theodore was promoted.

Arnold also alleges in her complaint that she was subject to disparate treatment in that she was forced to work without essential litigation and investigative support; that she was denied career enhancing opportunities; that she was undervalued; that Williamson unfairly highlighted an insignificant inter-office personality conflict to create the impression that Arnold was unsuited for senior trial attorney status; and that Williamson and Berkowitz intentionally discriminated against her by writing her performance evaluations in a manner designated to make Arnold look less competitive and competent than similarly situated

---

[4] While Arnold's EEO administrative complaint contained allegations of both racial and gender-based discrimination, her complaint in this matter only includes allegations of racial discrimination and retaliation.

white attorneys, thereby preventing her from receiving a merit-based promotion to GS-14.

Arnold also alleges that as a result of exercising her right to report discrimination to her supervisors, Williamson wrongfully retaliated against her by: issuing her a letter of warning on July 21, 1999 because she had missed a filing deadline in *Riley*; denying her requests to attend professional conferences in 1999; denying her request for staff assistance on February 8, 2000; issuing a memorandum on February 21, 2000 documenting unprofessional and unacceptable behavior; threatening her with a charge of insubordination on March 3, 2000; issuing her a letter of caution on July 11, 2000 as a result of an unprofessional argument Arnold had with a paralegal during a monthly staff meeting; and by failing to promote her to a GS-14 in July 2000.

**LEGAL ANALYSIS**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the burden of demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323. "A genuine issue of material fact exists only if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Alexander v. Dept. of Health and Family Services*, 263 F.3d 673, 680 (7th Cir. 2001). When making this determination, we review the record in the light most favorable to the nonmovant, and draw all reasonable inferences in her favor. *Id.* "Rule 56(c) mandates summary judgment when the nonmoving party fails to establish the

existence of an element essential to its case and on which that party will bear the burden of proof at trial." *Jefferson v. City of Chicago*, 2000 U.S. Dist. LEXIS 22081, *10 (N.D. Ill. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## I.    Arnold's Discrimination Claim

### A.    Statute of Limitations

The CFTC contends that Arnold's claims relating to discriminatory acts that occurred prior to January 30, 2000 are time-barred.  A federal employee who believes that she has been discriminated against on the basis of her race, color, religion, sex, national origin, age or handicap must initiate contact with an EEO counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  20 C.F.R. § 1614.105(a)(1).  This deadline is construed as a statute of limitations rather than a jurisdictional prerequisite.  *Johnson v. Runyon*, 47 F.3d 911, 917 (7th Cir. 1995).  Here, Arnold contacted an EEO counselor on March 14, 2000.  Therefore, according to the CFTC, Arnold's claims that she should have been promoted prior to January 30, 2000 are time-barred.

The 45-day deadline is a statute of limitations that will be extended if Arnold can show that she was not notified of the time limits and was not otherwise aware of them, that she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, or that despite due diligence she was prevented by circumstances beyond her control from contacting the counselor within the time limits.  20 C.F.R. § 1614.105(a)(2).  The individual claiming an extension has the burden of showing an extension is warranted.  *McSwain v. Runyon*, 990 F. Supp. 1001, 1003 (N.D. Ill. 1998).

Arnold contends that she had no reason to suspect that the CFTC's failure to promote her in 1998 and 1999 was because of racial discrimination. However, Arnold's deposition testimony and the allegations in her complaint belie this contention. Arnold testified that she told Williamson and Berkowitz in July 1999 that she believed she was being discriminated against. Furthermore, Arnold alleged in her complaint that in July 1999, she told her supervisors that several comments in her performance evaluations "were grossly inaccurate and maliciously written to prevent and cause [her] to appear less than competitive for promotion from GS-13 to GS-14 because of her race." Accordingly, the statute of limitations will not be tolled pursuant to 20 C.F.R. § 1614.105(a)(2).

Arnold also contends that summary judgment is inappropriate because she has alleged a continuing violation. "A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period." *Dasgupta v. University of Wisconsin Bd. of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997). A failure to promote is not of this character. As the Supreme Court made clear in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), a failure to promote is a discrete act of discrimination, and each discriminatory failure to promote constitutes a separate actionable "unlawful employment practice." Any discrete discriminatory acts that fall outside the statute of limitations are time-barred, even if they relate to acts that fall within the statute of limitations. *Id.* at 113; *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 723 (7th Cir. 2004).

Because the discriminatory acts identified by Arnold (*i.e.*, the CFTC's failure to promote her in 1998, 1999, 2000 and 2001) are discrete acts, Arnold's claims that she

should have been promoted in 1998 and 1999 cannot be rendered timely by applying the continuing violation doctrine. *Lucas*, 367 F.3d at 724. Therefore, Arnold's claims that she should have been promoted any time prior to January 30, 2000 are time-barred. The Court will begin its analysis of Arnold's claims with the CFTC's failure to promote Arnold in 2000.

**B.    Arnold's Prima Facie Case of Discrimination**

In order to prevail on her discrimination claim, Arnold may use either direct or indirect evidence to demonstrate that the CFTC discriminated against her on the basis of her race. *See Simmons v. Chicago Bd. of Ed.*, 289 F.3d 488, 492 (7th Cir., 2002). In this case, as in most employment discrimination matters, there is no direct, or "smoking gun" evidence. Therefore, Arnold must proceed under the indirect method set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* method, Arnold must first establish a prima facie case of discrimination. In order to establish a prima facie case of discrimination in a failure to promote case, Arnold must demonstrate that: (1) she was a member of a protected class; (2) she applied for and was qualified for the position sought; (3) she was subjected to an adverse employment action; and (4) similarly situated employees outside of her protected class were treated more favorably. *McDonnell Douglas*, 411 U.S. at 802; *Ghosh v. Indiana Dep't of Envtl. Mgmt.*, 192 F.3d 1087, 1091 (7th Cir. 1999).

There is no dispute that Arnold is a member of a protected class (African American) and that she suffered an adverse employment action (the CFTC's failure to promote her until July 2002).[5] The CFTC contends that Arnold cannot prove a prima facie case of

---

[5] Arnold's complaint contains other allegations of disparate treatment including that she was denied litigation/investigation support, that she was denied career enhancing opportunities,

15

discrimination because she cannot show that she was qualified for a promotion to GS-14 during the relevant time period and because she has no evidence that a similarly situated employee outside of her protected class was treated more favorably.

### 1. Arnold's Qualifications

The CFTC may select the qualifications it considers necessary for a promotion. *Smith v. Allstate Ins. Corp.*, 2001 U.S. Dist. LEXIS 13963, *27 (N.D. Ill. 2001). "The rationale for this rule is that courts do not sit as super-personnel boards." *Id.* The CFTC's standards for promotion to GS-14 were outlined in Aronow and Nathan's May 1998 memo, Aronow's June 1998 e-mail and Williamson's February 2000 email to Arnold. Arnold argues that Williamson and Berkowitz changed the system from tenure to merit-based promotions. She contends that this change was patently discriminatory and not approved by the CFTC. However, this contention is simply not supported by the evidence.

According to Aronow and Nathan's memo, supervisors should recommend for promotion to GS-14 those attorneys who have received consistently high ratings and have shown the ability to both function independently in all aspects of their job. Aronow's June 1998 e-mail indicates that an employee must be able to handle complex matters in order to be promoted. Williamson's email states that he looks for attorneys who write very well, have work product that reflects attention to detail, keep supervisors apprised of significant

---

that she was undervalued, that Williamson unfairly highlighted a personality conflict to make her look unsuitable for promotion and that her performance evaluations were designed to make her look less competitive and competent than similarly situated white attorneys. However, Arnold does not argue in her response brief that these actions constitute adverse employment actions, nor does she point out any similarly situated employee outside her protected class that was treated more favorably. Accordingly, there is no doubt that Arnold failed to establish a prima facie case of discrimination with respect to these actions. *McDonnell Douglas*, 411 U.S. at 802. Accordingly, the Court concentrates solely on Arnold's failure to promote claim.

developments, and demonstrate an ability to plan and timely complete investigations.

Arnold argues that it is uncontested that she was more than qualified for a promotion to GS-14 by May 1998. Regardless of her qualifications in 1998, as discussed above, we begin our analysis of Arnold's claims with the CFTC's failure to promote Arnold in 2000. Berkowitz and Williamson's affidavits along with Arnold's performance evaluations demonstrate that Arnold was not qualified for a promotion to GS-14 in 2000. Berkowitz explained in her affidavit that Arnold was not qualified for a promotion in 2000 because Arnold required more supervision than Berkowitz expected of a GS-14, she needed to improve her time and case management, she failed to keep her supervisors informed about developments in her investigations and she repeatedly failed to meet deadlines.

Williamson explained that Arnold did not meet the qualifications for promotion to GS-14 in 2000 because Arnold had not demonstrated the requisite ability to plan and organize her work, she failed to adapt well to changing assignments and multiple priorities or demonstrate an ability to independently guide investigators. Williamson further explained that Arnold failed to set and meet appropriate deadlines and that she failed to timely inform her supervisors of problems. Williamson also stated that Arnold did not always act with the demeanor he expected of a senior trial attorney. Additionally, Arnold's performance evaluations highlight problems with her performance that are inconsistent with the CFTC's standards for promotion to GS-14.

As the moving party, the CFTC bears the initial burden to demonstrate the absence of a genuine issue of material fact with respect to Arnold's discrimination claim. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996). Once the CFTC satisfies its initial burden, Arnold must then "set forth specific facts showing that there is a genuine

issue for trial." Fed. R. Civ. P. 56(e). Here, the CFTC clearly satisfied its initial burden by producing evidence demonstrating that Arnold was not qualified to be promoted in 2000.[6] In particular, Arnold's failure to meet deadlines, her failure to keep supervisors informed, her inability to supervise others and her inability to work independently in all aspects of her job are inconsistent with the CFTC's standards for promotion to GS-14.

In contrast, Arnold has failed to present any evidence other than Hollinger's affidavit and her own unsupported allegations that she was qualified to be promoted to GS-14 prior to July 2002. Hollinger's affidavit does not create a question of fact about Arnold's qualifications for promotion to GS-14. *See Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir. 1980). Furthermore, Arnold's subjective opinions of her performance are not adequate evidence to support her argument that she should have been promoted earlier. *Stallings-Daniel v. Northern Trust Co.*, 2003 U.S. Dist. LEXIS 13296, *40 (N.D. Ill. 2003).

Arnold has failed to set forth specific facts about her qualifications to show that there is a genuine issue for trial. Accordingly, Arnold cannot survive the CFTC's motion for summary judgment. *Griffin v. Potter*, 356 F.3d 824, 828 (7th Cir. 2004) (recognizing that a plaintiff is required to demonstrate a triable issue as to each element in order to survive the defendant's motion for summary judgment).

## 2. Similarly Situated Employees

Even if Arnold had demonstrated that she was qualified for a promotion prior to July

---

[6] While Arnold alleges that the CFTC discriminated against her by failing to promote her until July 2002, the evidence before us relates to Arnold's qualifications from 1998-2000. Neither party has submitted performance evaluations, affidavits or any other evidence relating to Arnold's performance in 2001 or early 2002.

2002, Arnold still would need to show that similarly situated employees outside of her protected class were treated more favorably.  A similarly situated employee is someone who is directly comparable to her in all material respects including: performance, qualifications, experience, and education.  *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 617-618 (7th Cir. 2000).  Similarly situated employees also usually deal with the same supervisor.  *Id.*

The only attorneys who could possibly fall within the category of similarly situated employees are Ann Theodore and Diane Romaniuk.[7]  Theodore was promoted to a GS-14 position on July 2, 2000.  The evidence before us distinguishes Theodore and Arnold on the basis of their performance, qualifications, experience and conduct.  For instance, Theodore had displayed outstanding skills in running several large investigations and litigating complex actions with minimal supervision, while Arnold needed more supervision than was expected of a GS-14.  Theodore had previously served as a law clerk for a district court judge and had worked as an associate and been made a partner at a major Chicago law firm before she was hired by CFTC.  Arnold had no similar experience.  With respect to conduct, there is no evidence that Theodore was issued a letter of warning or caution or that she had engaged in any other unprofessional behavior similar to Arnold's. Theodore also was recommended by her team leader for the promotion in 2000, while Arnold was not.  Based on the foregoing, we cannot conclude that Theodore qualifies as a similarly situated employee.

---

[7] Arnold argues that other attorneys (Berkowitz, Williamson, Janulis and Brestler) were promoted based on the tenure system through 1998.  However, these attorneys were promoted outside the relevant time period and there is no evidence why these attorneys were promoted.

Likewise, Diane Romaniuk does not qualify as a similarly situated employee. Romaniuk was promoted to GS-14 on April 3, 2002, three months before Arnold. The evidence before us distinguishes Romaniuk and Arnold on the basis of their experience. Romaniuk had been a practicing attorney for twenty-seven years when she was promoted while Arnold had been practicing eleven years at that time. Prior to working for the CFTC, Romaniuk had worked for the Illinois ARDC for two years, the FDIC for four years, Chicago Title & Trust for four years, and she had been a public defender for more than ten years. While Arnold may have been at the CFTC for more years that Romaniuk, she did not have similar prior work experience. Neither party submitted evidence of Romaniuk's conduct or performance during the relevant time period. Simply put, Arnold has failed to set forth specific facts to establish that Romaniuk, Theodore or any other CFTC employee was a similarly situated employee comparable to Arnold in all material respects. Arnold bears the burden of demonstrating the existence of a question of fact on this issue and she has failed to meet that burden.

### C. Pretext

Assuming a plaintiff succeeds in establishing a prima facie case of discrimination, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for its action. *McDonnell Douglas*, 411 U.S. at 802-803. If the defendant articulates such a reason, the burden then shifts back to the plaintiff to demonstrate that defendant's articulated reason is a pretext. *Henry v. Ameritech Corp.*, 2004 U.S. Dist. LEXIS 3719, *18 (N.D. Ill. 2004). In order to establish that defendant's articulated reason is pretextual, a plaintiff must show that the explanation is dishonest, rather than merely an error. *Id.*

Even if Arnold had established a prima facie case of discrimination, there is no evidence that the CFTC's reason for not promoting her prior to July 2002 was pretextual. The articulated reason, that Arnold was not qualified, is a legitimate, nondiscriminatory reason for the CFTC's decision not to promote Arnold. To prove pretext, a plaintiff must show: 1) defendant's explanation for its actions had no basis in fact; 2) the explanation was not the real reason; or 3) the reason given was insufficient to support the action. *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 652 (7th Cir. 2001). Arnold's performance evaluations and Williamson and Berkowitz's affidavits demonstrate that the CFTC's decision not to promote Arnold had a basis in fact. There is no evidence that Williamson and Berkowitz's articulated reason for failing to promote Arnold sooner did not actually motivate their decisions. Furthermore, based on the evidence submitted, we find that the CFTC's articulated reason was sufficient to support the decision not to promote Arnold until 2002.

Finally, the evidence Arnold relies on does not demonstrate that the articulated reason is dishonest and therefore, pretextual. To bolster her claim of pretext, among other things, Arnold argues that her work from 1996-1998 was exemplary, that she was not identified as an attorney with performance-related problems, that the missed filing deadline in *Riley* did not affect Williamson and that Williamson secretly favored Romaniuk. Arnold also contends that her subsequent promotion in 2002 raises an issue of pretext because her work product, training, skills and behavior did not change between 1999 and 2002. We have reviewed all of the facts Arnold points to and we are simply not persuaded that any of them raise a factual issue with respect to pretext. Indeed, some of the facts Arnold relies on to establish pretext are not even supported by the record. Thus, Arnold has failed

21

to set forth specific facts which demonstrate a triable issue as to pretext.

Because Arnold has failed to demonstrate the existence of a question of fact on the issues of her qualifications, similarly situated employees and pretext, the CFTC's motion for summary judgment on Arnold's discrimination claim is granted.

## II.    Arnold's Retaliation Claim

Arnold alleges that in retaliation for complaining to her supervisors about racial discrimination, Williamson wrongfully retaliated against her by: (1) issuing her a letter of warning on July 21, 1999 because she had missed a filing deadline in *Riley*; (2) denying her requests to attend professional conferences in 1999; (3) denying her request for staff assistance on February 8, 2000; (4) issuing her a memorandum on February 21, 2000 documenting unprofessional and unacceptable behavior; (5) threatening her with a charge of insubordination on March 3, 2000; (6) issuing her a letter of caution on July 11, 2000 as a result of an unprofessional argument with a paralegal; and (7) by failing to promote her to a GS-14 in July 2000.[8]

The CFTC contends that the first two acts of retaliation are time-barred.  We agree. Arnold did not contact an EEO counselor until March 14, 2000.  Therefore, the first two acts of retaliation that allegedly occurred in 1999 are time-barred because they occurred

---

[8] The CFTC argues that the first five retaliatory acts are barred for failure to exhaust administrative remedies.  As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge.  *Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).  The only qualification to this principle applies to claims that are "like or reasonably related" to the EEOC charge, and can be reasonably expected to grow out of an EEOC investigation of the charges.  *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc).  Here, Arnold failed to mention retaliation or reprisal in her EEO administrative complaint.  Nevertheless, we decline to address this issue because as discussed more fully below, even assuming Arnold did exhaust her administrative remedies on her retaliation claims, those claims still fail.

more than 45 days before Arnold contacted the EEO counselor. 20 C.F.R. § 1614.105(a)(1). Accordingly, the Court will begin its analysis of Arnold's retaliation claims with the retaliatory acts that occurred in 2000 and thereafter.

### A.    Prima Facie Case of Retaliation

As with the discrimination claim, Arnold has no direct evidence of retaliation. Therefore, she must show that: (1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in a statutorily protected activity. *Haywood v. Lucent Technologies*, Inc., 323 F.3d 524, 531 (7th Cir. 2003).

The CFTC argues that Arnold's retaliation claims fail because she cannot identify a similarly situated employee for any of the retaliatory acts she alleges. We agree. Arnold has failed to establish the existence of a material fact with respect to whether she was treated less favorable than similarly situated employees who did not complain about discrimination. Indeed, Arnold has failed to set out specific facts showing the existence of a similarly situated employee with respect to the following acts of retaliation: Williamson's denial of her request for staff assistance, the issuance of the February 21, 2000 memorandum, the threat of an insubordination charge, and the July 2000 letter of caution. Furthermore, with respect to the CFTC's failure to promote Arnold in 2000, as discussed above, Arnold failed to set forth specific facts to establish that Romaniuk, Theodore or any other CFTC employee was a similarly situated employee.

At a minimum, Arnold is required to demonstrate a triable issue as to each element

in order to survive the CFTC's motion for summary judgment. *Griffin v. Potter*, 356 F.3d 824, 828 (7th Cir. 2004). Because Arnold failed to identify a similarly situated employee, summary judgment on her retaliation claim is appropriate.

**B.    Pretext**

Again, we find that Arnold has failed set forth specific facts which demonstrate that the CFTC's articulated reasons for its actions were pretextual. Arnold's failure to establish a prima facie case of retaliation is fatal and therefore, we need not engage in a full discussion on the issue of pretext.

**CONCLUSION**

For the reasons set forth above, the CFTC's motion for summary judgment is granted. Judgment is hereby entered in favor of the defendant and against the plaintiff. It is so ordered.

**ENTER:**

**MICHAEL T.  MASON**
**United States Magistrate Judge**

**Dated:    March 25, 2005**